UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RODOLIGHT LLC, et al.,

   Plaintiffs,

  v.

USA TRUCK LINES, INC., et al.,

   Defendants.

No. 25 CV 6093

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiffs Rodolight LLC and Paul Rodoslavov filed a complaint against defendants USA Truck Lines, Inc., Stery Trucking, Ltd., Quality Refrigerated Transport, Inc., Quality Truck and Reefer Repair Inc., Big Mike Towing and Recovery, Inc., Mike Davidovich, Yelena Gimelshteyn, Steven Davidovich, Ryan Davidovich, and Oksana Kolyadenko, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, the Illinois Whistleblower Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and civil conspiracy. Defendants move to dismiss the civil RICO claims for failure to state a claim, and the Illinois state-law claims for lack of jurisdiction. For the reasons discussed below, the motion is granted.

I. **Legal Standards**

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the

plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.*

Where a plaintiff alleges that the predicate acts of racketeering under RICO involve fraud, the complaint must describe "with particularity" the circumstances of the fraud to satisfy the heightened pleading standard under Fed. R. Civ. P. 9(b). *Ratfield v. U.S. Drug Testing Lab'ys, Inc.*, 140 F.4th 849, 852 (7th Cir. 2025). This means plaintiffs must allege the "who, what, when, where, and how" of the fraudulent activity. *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021). In a case with multiple defendants, the complaint "should inform each defendant of the nature of his alleged participation in the fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir. 1994)).

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor. *Ratfield*, 140 F.4th at 851–52.

## II.    Facts

Defendants consist of a family that owns a variety of trucking companies, the companies themselves, and one of the employees of the companies. Mikhail Davidovich was the president and director of both Quality Truck and Reefer Repair

2

and Quality Refrigerated Trucking. [1] ¶¶ 1, 27.[1] In 2009, he was also listed as a director for Stery Trucking, Ltd. [1] ¶ 27. Mikhail's wife, Yelena Gemelshteyn, was the president, secretary, and director of Stery Trucking and Big Mike Towing and Recovery. [1] ¶¶ 28, 31. Mikhail's son, Steven Davidovich, was the president and director of USA Truck Lines, Inc.  [1] ¶¶ 1, 29, 31. Mikhail's other son, Ryan Davidovich, served as a dispatcher for the companies, which plaintiffs describe as the "Davidovich companies." [1] ¶¶ 1, 26, 31. Oksana Kolyadenko was the human resources manager for the Davidovich companies. [1] ¶¶ 1, 32, 87.

USA Truck Lines and Quality Refrigerated Trucking specialized in transporting food products and goods requiring temperature controls using refrigerated trailers, called reefers. [1] ¶ 38. Stery Trucking was not a licensed commercial motor carrier, but rather leased, licensed, or loaned trucks and trailers that it owned to the other Davidovich companies. [1] ¶¶ 39–40. Plaintiffs allege the Davidovich companies were either alter egos of one another or acting in concert with each other. [1] ¶ 26.

Plaintiff Paul Rodoslavov was a commercial truck driver who operated through Rodolight, LLC, which he wholly owned and managed. [1] ¶¶ 1, 35. He and Rodolight entered into an independent contractor agreement with USA Truck Lines and Stery Trucking. [1] ¶ 36. Once Rodoslavov began working, however, he alleges that the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' complaint, [1].

actual relationship with USA Truck Lines and Stery Trucking was one in which the companies exercised substantial control over his work. [1] ¶ 45. Rodoslavov was given a truck and trailer without a lease and given specific instructions by the Davidovich companies about how, when, and to whom to deliver goods. [1] ¶ 46.

Rodoslavov says that part of his work involved changing trailers up to two to three times a week at a truck yard, third-party transfer warehouse, or facility that partnered with the Davidovich companies. [1] ¶ 49. While changing trailers, Rodoslavov alleges that the Davidovich companies would take sealed trailers and have them illegally opened and unloaded, have goods stored at unregulated temperatures in warehouses without proper refrigeration and have the packaged goods transferred to other trailers with multiple loads per trailer for a single driver to make deliveries to multiple locations. [1] ¶¶ 50, 62. At the direction of Ryan Davidovich, Rodoslavov alleges that he opened boxes to measure the temperature of the goods inside and then closed them up to conceal tampering. [1] ¶¶ 56–57. He says this was happening on "nearly every other load." [1] ¶ 59.

Rodoslavov also alleges that when a truck driver picked up refrigerated food products from a shipper, the shipper put a seal on the back door of the truck trailer, which could only be opened by the receiver when he or she verified the seal number of the door of the truck matched the seal number on the bill of lading for the shipment. [1] ¶ 52. Rodoslavov says that he was instructed by Ryan on multiple occasions to falsify seal numbers and bills of lading when making deliveries. [1] ¶ 53. On one occasion, Ryan ordered Rodoslavov to deliver a load that had broken original seals

4

and told Rodoslavov to conceal the broken seal with a new one and forge the bill of lading by using white-out. [1] ¶¶ 54–55.

Rodoslavov alleges that the Davidovich companies would use him to deliver orders to customers under various company names to cover up their practice of mixing loads. [1] ¶ 61. For example, on two occasions, Ryan told Rodoslavov to check in with a customer under the company name Quality Refrigerated Transport instead of USA Truck Lines or Stery Trucking. [1] ¶ 61. On another occasion, Ryan ordered Rodoslavov to check in as Big Mike Towing and Recovery. [1] ¶ 61.

Rodoslavov says that the Davidovich companies manipulated logbooks' time, location, miles, hours of service, and driver information, and used a third-party vendor to manipulate the hours of service of their drivers and other information from the trucks' electronic logging devices in order to evade limits on how long drivers could drive. [1] ¶ 63. The Davidovich companies would require drivers to drive longer than they were legally allowed and without required break periods, covering up the alleged violations by adding a fictitious "co-driver" to their logs. [1] ¶ 64. Rodoslavov himself routinely drove for longer periods than was legal. [1] ¶ 65.

Rodoslavov also alleges that the Davidovich companies required Rodoslavov and his company to use trucks that were defective or manipulated in a manner that that made them unsafe to drive or that exposed Rodoslavov to legal liability. [1] ¶ 69. For example, the diesel exhaust fluid, which is used to minimize harmful emissions from diesel fuel trucks, was disconnected from truck exhaust lines. [1] ¶ 70. When Rodoslavov noticed his diesel exhaust fluid indicator was not moving throughout his

trips and told Quality Repair mechanics about it, the mechanics told him the connection was cut off from the exhaust. [1] ¶ 70. Because of the cutoff, none of the fluid was being used, and the truck's emissions were not legal. [1] ¶ 70. Rodoslavov was ignored when he expressed his concerns. [1] ¶ 70.

The Davidovich companies also required Rodoslavov to drive trucks that were unsafe for the road, including errors in the trucks' automatic braking systems. [1] ¶ 71. Davidovich says he complained to Ryan, the mechanics at Quality Repair, "and/or those working for the Davidovich companies" about the defective trucks, but his complaints were ignored. [1] ¶ 72.

## III. Analysis

### A. RICO Claim

The Racketeer Influenced and Corrupt Organizations Act prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim under § 1962(c), the complaint must allege that the defendants engaged in the (1) conduct (2) of an enterprise (3) through a pattern of racketeering activity. *Muskegan Hotels*, 986 F.3d at 698. Defendants challenge plaintiffs' complaint on each of these elements.

#### 1. Enterprise

A RICO "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although

6

not a legal entity." 18 U.S.C. § 1961(4). To state a RICO claim, plaintiffs must allege an enterprise and identify a "'person'—*i.e.*, the defendant—that is distinct from the RICO enterprise." *Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 588 (7th Cir. 2017) (quoting *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 749, 853 (7th Cir. 2013)).

Defendants argue that plaintiffs have failed to allege an enterprise distinct from the defendants. Plaintiffs rely on an association-in-fact enterprise, which has three structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit the associates to pursue the enterprise's purpose. *Roppo*, 869 F.3d at 588 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

Plaintiffs allege that there were ten defendants, all separate from the enterprise itself, that worked together to deceive customers to reduce costs and maximize profits by breaking seals, combining loads, and falsifying records. [1] ¶¶ 60, 62. The complaint includes allegations about how each person was related to each other and to the companies involved. *See* [1] ¶¶ 18–32. Even if the companies were "alter egos," the complaint still alleges that the combined alter-ego companies worked with the individual defendants to engage in the conduct underlying the RICO claims.

Plaintiffs allege that the enterprise existed at least as long as Rodoslavov had worked for USA Truck Lines and Stery Trucking (from February to May 2024), and that the conduct underlying the claims were a "policy and practice" of the defendants. [1] ¶¶ 48, 59–60. Rodoslavov alleges that he completed multiple trips for the

7

defendants, "nearly every other load" combined with another. [1] ¶¶ 59–62. This is enough to allege longevity sufficient for the defendants to achieve the purpose of cutting costs and increasing profit margins. Plaintiffs have sufficiently alleged the three structural features of an association-in-fact enterprise.

### 2. Pattern of Racketeering Activity

Defendants also say that plaintiffs failed to allege any pattern of racketeering activity. Under the RICO statute, a racketeering activity includes any act which is indictable under 18 U.S.C. §§ 1341, 1343, 1512, and 2314–15. 18 U.S.C. § 1961(1). A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). To plead a pattern of racketeering activity, "a plaintiff must demonstrate a relationship between the predicate acts as well as a threat of continuing activity," what is known as the "continuity plus relationship" test. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 337 (7th Cir. 2019) (quoting *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011)). The "relationship" prong of the test may be satisfied by "acts of criminal conduct close in time and character, undertaken for similar purposes, or involving the same or similar victims, participants, or means of commission." *Id.*

The continuity prong of the test requires demonstrating either (1) a "close-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit," or (2) an "open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future." *Id.* (quoting *Roger Whitmore's Auto Servs., Inc. v. Lake Cnty.*, 424 F.3d 659, 673 (7th Cir. 2005)). For

8

either sign of continuity, "[t]he big picture question is whether [plaintiffs] adequately alleged that the challenged conduct occurred and went on long enough and with enough of a relationship with itself to constitute a pattern." *Id.*

Plaintiffs adequately allege an open-ended series of conduct to satisfy the pattern element. An "open-ended" series of misconduct "focuses not on what acts occurred in the past but on whether a concrete threat remains for the conduct to continue moving forward." *Id.* A plaintiff can show that a concrete threat remains by showing "that the predicate acts form part of the defendant's ongoing and regular way of doing business." *Id.*

Plaintiffs allege that, starting just days into their employment, and for nearly every other load they delivered for the defendants over the course of months, defendants would illegally open and unload goods from sealed trailers, store the goods without proper refrigeration, and transfer them to other trailers with other loads to be delivered by a single driver to multiple locations. [1] ¶¶ 48, 50, 59. The defendants would also falsify and manipulate documents, namely, by altering seal numbers and bills of lading, to conceal their illegal tampering. [1] ¶¶ 51, 53. Plaintiffs were told to make multiple stops and check in with customers under different company names. [1] ¶ 61. Plaintiffs also allege that the defendants had the diesel exhaust fluid disconnected from truck exhaust lines in violation of the law, would require them to drive trucks that were unsafe for the road, tampered with electronic logging devices, and falsified log data. [1] ¶¶ 8, 64, 70–71, 79, 120. Plaintiffs allege that all of this was a policy and practice of the Davidovich companies to reduce costs, increase profit

9

margins, and steal driver compensation. [1] ¶¶ 59–60. They further allege a systemic evasion of regulations through tampering with electronic logging devices. [1] ¶ 79. The allegations show that the predicate acts of fraud formed part of the defendants' ongoing and regular way of doing business, so there is a concrete threat of ongoing conduct. *Menzies*, 943 F.3d at 337. The plaintiffs have alleged a pattern of racketeering activity.

### 3. Conduct by Each Defendant

But the complaint falls short in giving adequate notice to defendants about the actionable conduct attributable to each of them. Plaintiffs allege that defendants were engaged in acts of wire and mail fraud, witness tampering, and trafficking in unlawfully converted property. [1] ¶¶ 115–24. A plaintiff must allege that a defendant "conduct[ed] or participate[d] … in the conduct of [the] enterprise's affairs." *Muskegan Hotels*, 986 F.3d at 698 (quoting 18 U.S.C. § 1962(c)) (alterations in original). This requires the defendant participate "in the operation or management of the enterprise itself." *Id.* (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). The defendant must have "played 'some part in directing the enterprise's affairs.'" *Roppo*, 869 F.3d at 589 (quoting *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998)).

When a plaintiff seeks to plead RICO's pattern element through predicate acts of mail or wire fraud, the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply. *Menzies*, 943 F.3d at 338. A plaintiff must plead particular allegations detailing the fraud: the "who, what, when, where, and how" of the alleged fraud. *Id.*

The "most basic consideration" of Rule 9(b)'s heightened pleading standard is to "provide fair notice to each individual Defendant concerning the nature of his or her alleged participation in the fraud," so "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Rocha*, 826 F.3d at 911 (quoting *Vicom*, 20 F.3d at 777–78). A complaint that "lump[s] together" defendants for pleading purposes, or alleges fraud "on information and belief," is not enough. *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019); *United States ex rel. Mamalakis v. Anesthetix Mgmt. LLC*, 20 F.4th 295, 301 (7th Cir. 2021).

Plaintiffs' allegations fail to satisfy the Fed. R. Civ. P. 9(b) standard. Except for Ryan Davidovich, plaintiffs do not allege with particularity the actions of the other individual defendants or the companies in connection with any of their fraud allegations. Instead, plaintiffs just say "the Davidovich companies" or "defendants" engaged in the allegedly fraudulent conduct. *See, e.g.*, [1] ¶¶ 48, 50–51, 53–54, 56–57, 60–64, 79, 117, 119–20, 122, 124, 126. Plaintiffs lumped together the defendants without providing particularized allegations about each defendant's role in the alleged scheme, so do not meet the pleading requirements of Rule 9(b). *Cornielsen*, 916 F.3d at 599. Plaintiffs also allege that, on "information and belief," the Davidovich companies were engaged in the fraudulent conduct. *See* [1] ¶¶ 26, 60, 62–63, 79. Rule 9(b) requires particularity in alleging facts that is not satisfied by allegations made on information and belief. *Mamalakis*, 20 F.4th at 301.

The complaint, as it stands, only shows that Ryan Davidovich had a hand in the fraud underlying the alleged RICO enterprise. Although plaintiffs did name

11

defendant Kolyadenko in more particularized allegations in the complaint, the allegations only describe her actions in her role as a human resources manager. [1] ¶¶ 87, 91–92. "[T]he operation-or-management requirement is not met through the mere provision of professional services to the alleged racketeering enterprise." *Muskegan Hotels*, 986 F.3d at 698. Knowledge of the unlawful activities of the enterprise alone is not enough. *Id.* at 698–99. Plaintiffs failed to allege that Kolyadenko even knew about the alleged fraud, much less that she conducted or participated in the operation or management of the alleged enterprise. *Id.*

Without the other defendants' involvement, plaintiffs' alleged association-in-fact falls apart, and no RICO claim can lie against Ryan alone based on the remaining allegations in the complaint. Because there are no particularized allegations about each defendant's role in the alleged fraud underlying plaintiffs' RICO claim, the RICO claim is dismissed.

### B.    State Law Claims

Defendants say that without the federal RICO claims, there is no federal jurisdiction because plaintiffs did not adequately allege diversity jurisdiction. Defendants are correct; plaintiffs' allegations that Rodoslavov resides in Georgia is not enough to show his citizenship, which is required to allege diversity jurisdiction. *Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 867 (7th Cir. 2012) ("An allegation of residence is not sufficient to establish citizenship, which requires domicile."). Diversity jurisdiction was also inadequately alleged because plaintiffs allege the individual defendants' citizenship on information and belief. *See Qin v.*

*Deslongchamps*, 31 F.4th 576, 578 (7th Cir. 2022) (citing *Page v. Wright*, 116 F.2d 449, 451 (7th Cir. 1940), which "express[ed] doubt that allegations of a party's citizenship for diversity purposes made only on information and belief can suffice to establish jurisdiction"). I decline to exercise supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367 without the RICO claims. 28 U.S.C. § 1367(c)(3). Because I decline to exercise supplemental jurisdiction, and there is no diversity jurisdiction, plaintiffs' state-law claims are dismissed without prejudice.

## IV.    Conclusion

Defendants' motion to dismiss, [26], is granted. Plaintiffs' RICO claim is dismissed without prejudice for failure to state a claim, and their state law claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3).[2] Plaintiffs have leave to file an amended complaint by May 22, 2026. If no amended complaint is filed, the dismissal of the federal claim will automatically convert to a dismissal with prejudice and the clerk will enter judgment terminating this case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: April 30, 2026

---

[2] Plaintiffs are "generally entitled to at least one chance to amend their complaint to cure an error in response to a district court's dismissal order." *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 671–72 (7th Cir. 2023) (internal quotation marks and citation omitted).